Good morning everyone. The panel had before it a total of six cases. Two of them are being submitted without an oral argument today on the briefs. They are Appeal No. 06-3315, Kerr v. Department of the Army, and Appeal No. 06-1556, Krasky v. Patton v. Tremont Office. The argument this morning will first hear Appeal No. 05-1587, RFR Industries v. Rex-Hide Industries. Mr. Oak, welcome. Good morning. Good morning. Please proceed. May it please the court. Good morning, Your Honors. My name is Robert Oak, and I represent RFR Industries. This is an appeal of two summary judgments of a bench trial, two attorney peer reports, and a permanent injunction. The district court initially granted a summary judgment against RFR and in favor of Century on the issue of indemnity. Then a bench trial was held solely on the issue of indemnity between Century and Rex-Hide. Following this bench trial, the district court found that indemnity existed, and based on that finding, held that RFR's patent infringement claims against Rex-Hide had been extinguished or released through the circuity of indemnity that the district court held had occurred. Well, counsel, what about the injunction? As I recall, the complaint prayed for injunctive relief as well as damages. Is that right? Yes, Your Honor, it did. And did the request for injunctive relief disappear at some point? Was it waived or forfeited or abandoned during the litigation? No, Your Honor. The patent infringement issues were never reached by the district court. And so the patent infringement issues of RFR against Rex-Hide and whether Rex-Hide infringed and a permanent injunction should be entered against Rex-Hide, that issue was never reached. I understand, but what I'm trying to get clarity on is even if there were what's been called circular indemnity, that might only take care of damages, but not the right of a patentee to enjoin continuing infringement of a patent. Your Honor, I don't disagree with that. The judgment was made final under the certification procedures. And so it was felt that the patent issues should not be litigated and the contractual indemnity issues should be litigated. But I don't disagree with Your Honor about the injunctive relief. Well, I accept that you don't disagree with the Chief, but I didn't see anywhere in the brief where you argued that. I mean, you didn't argue, did you, that even assuming there is this circular indemnity, there's still this potential for this need for an injunction out there to protect our rights and the patent? Well, that, because that issue was never reached in the district court, at the district court level. The issue of patent infringement and whether an injunction should be entered, that simply was never reached. And my view would be that that issue is still alive, particularly if this case is reversed. And I suppose even if this case is not reversed, that would be. So you're betting the ranch, then, on convincing us that complete circularity of indemnity was not established? Well, I would say that I have not thought through the other issue. Which probably means that your opponents will argue that you waived it. You didn't raise it below, you didn't raise it in your brief. Too late now, therefore, tell us about why the indemnity is not circular. All material facts on the indemnity issues, the release issues, are undisputed, except for one issue. And that issue is whether Century initially provided rec side with the design specifications. Even that disputed fact is ultimately irrelevant when the law is promptly applied to the undisputed facts. I'd like to first discuss the indemnity release issues, the return speech issues, and then briefly the injunction. The district court, after the bench trial, had Century owe rec side statutory and contractual indemnity. Now the statute in play here is Texas and Business Commerce Code 2.312C. And that is similar to the UCC provision, and that contains both a warranty provision and an indemnity provision. Two district courts in the Chemtron and Motorola case have held that the warranty provision does not apply to conduct-based claims, such as induced infringement. And the reasoning of these courts is that the warranty extends only as to the product and not to claims involving conduct. Further reasoning in these courts is that a person should not be able to purchase a non-infringing product, then through non-conduct create a cause of action and impose liability on the seller. This court should also hold that the indemnity provision of this statute does not apply to conduct-based claims for several reasons. First of all, under the language of the statute, the two sections, warranty and indemnity, use the term claim in an identical fashion. The indemnification provision uses the language such claim, which refers back to the phrase rightful claim of infringement or the like of the warranty provision. Since the statute uses the term claim in a consistent manner between the warranty provision and the indemnity provision, and when the warranty provision is properly construed to not include conduct-based claims, it would be consistent to also interpret the indemnification provision as not including conduct-based claims. Secondly... Who would be in conduct-based claims? Indeed. The claims involving... Manufacturing is a form of conduct. Well, the particular claim in these two cases was induced infringement. We have to have knowledge and an intent that the part would be used in an infringing manner. Secondly, the underlying reason is the same. A purchaser who provides specifications for a non-infringing product should not have to ingramify a seller for the seller's own culpable conduct if the seller knows that the non-infringing part would be used in an infringing manner. And this would be particularly true if the seller knew that it would be used in an infringing manner and the purchaser did not know. The official comment to this section also supports this interpretation because it states that for the duty of indemnity to arise, it must be the resulting product that infringes the patent. And this is all under Uniform Commercial Code? Yes, Your Honor. Statutory indemnity. So, in conclusion, there is not statutory indemnity. Now, Rex Hyde and Century have mentioned the cover case decided by this Court. The cover case does not apply. The specific issue and only issue there was whether the patent marking statute preempted a similar statute. And the cover case does not address this specific issue. The cover of this Court ruled that the patentee had settled with everyone and, therefore, the patent statute was no longer in the picture. In this case, it still is in the picture. So, in conclusion, no statutory indemnity between Century and Rex Hyde. The second basis was contractual indemnity. The only source for contractual indemnity between Rex Hyde and Century was on the reverse side of a quotation form, the boilerplate language. There was absolutely no evidence of any other written agreement or oral agreement or any contemporaneous discussion. Are you suggesting that the fact that it's boilerplate or printed on the back side of a piece of paper has some legal significance? Only to the extent that we are limited only to the contracts in play. And there's no evidence that the parties had any discussions about what terms should be included in these documents at the time. There's no evidence that the parties discussed indemnity at all during these transactions. Well, the assertion isn't that there was an oral contract concerning indemnity based on oral discussions. The assertion is that the quotation text merged into the final sale contract and returned the contract. Therefore, the language in that quotation form is language of the final contract. What's your answer to that? Well, since there was no other evidence except the exchange of the documents, the issue about whether the terms became a part of the contract must be decided solely by looking at the documents themselves. And under Texas law, a quotation form that reserves the right of acceptance in the person offering the quote is incapable as a matter of law of being an offer that can be accepted. The argument isn't that it became a contract immediately itself. The argument, as I understand it, is it was part of the exchange of documents that resulted undeniably in the end in a sale contract, rubber for money. But the term insisted on by the extruder was a term that contained indemnity language. I don't understand how that gets derailed somehow. Well, under contract law, particularly Texas contract law, you must have an offer and an acceptance. There's no doubt in the end there was an offer and acceptance and a valid contract of sale for the rubber, for money. The only question is what are all the terms of that contract? The argument, as I understand it, on the other side is that whether it constituted an offer by itself that could form a contract upon acceptance or not, it still became part of the contract document. It was an understood, documented part of the final sale contract. I don't understand how you're responding to that. OK. Well, you can have a contract that is based upon the conduct of the parties. But in that case, the terms of the contract— That's not what they're arguing for. They're not saying because of some kind of conduct not recorded in text. They're saying, here's some text. It became part of the final contract. It merged into the other documents to become part of the final contract. And I don't see that you have an answer to that. When you have documents going back and forth, you have to analyze the documents and say where's the offer, where's the acceptance. And if the only indemnity terms are on a document that came before the initial offer, that never becomes part of the contract. What's your basis for saying that? I would say it would always become a part of the contract. No, because when you initially have a quote and you reserve the right of acceptance, that means something else has to be the offer. In this case, the purchase order was the offer, and it came after the quotation. Yes, but the party submitting the quote is obviously saying, I'm willing to bargain with you, the other party, for this potential contract, but only on the terms set out in the text on the back of this document. Well, so that when there later is something that we can all agree was an offer and still later something we can all agree is an acceptance, that term carries forward, that the text carries forward. Well, the underlying reason that we understand a quote that reserves the right of acceptance does not become an offer is because contract law, an offer, is something that ultimately, if it's accepted, it forms the contract. If you have a quote that reserves the right of acceptance, it cannot be accepted to form a contract. The person that offers the quote has the option of getting out of it and not living with the contract terms. I understand your view. Do you want to save any of your rebuttal time? You're down to less than two minutes here. Well, let me ask you just for a few seconds a question about the attorney's fees issue. Yes. Did you make an argument to the district court that there shouldn't be an obligation to pay attorney's fees when you determine whether there's an indication? Yes, I did. That argument was made? Yes, yes, Your Honor. Okay, and the district court never held that argument? No, no, Your Honor, it didn't. Let me finally say on the contractual issue that the contract quote form only covered parts produced, didn't cover conduct, so even if there is contractual indemnity, it does not cover the contract. Let me just say, if I could, on the no-release clause, even if there was contract, even if there was statutory and contractual indemnity between Century and Rexheim, the contract settlement agreement between RFR and Century contemplated this and Century, or RFR, put in a clause that said nothing in this agreement shall be construed as a release of Rexheim. And I've detailed and proved why that should not result in an indemnity. Thank you. All right, thank you. Mr. Kirkpatrick. May it please the Court? I represent Rexheim Industries, Inc., and what's telling when I was reviewing the appellant's RFR brief is in his entire statement of facts, although we had a best trial, there is not one record cite to the trial evidence. Rather, all his record cites are to self-serving affidavit statements from his president. That's because he has no trial testimony or evidence to support his story. On the other hand, we have clear findings of fact from the district judge, and those findings, facts, are overwhelmingly supported by the trial evidence. Let me ask you about the attorney's fees. With RFR, what does it matter for? Are they obligated to pay attorney's fees with respect to establishing indemnification? Because they make that argument in the blue brief, and you don't seem to explicitly disagree with that. That was briefed out in front of the judge, and the judge, I think, took that into consideration when he reduced our fees by approximately 30%. Yeah, but we're here reviewing the district court judge's mention, the issue of whether or not there's a right to attorney's fees on indemnification. Right. Are you assuming then, are you saying that we should assume that the 25% knockdown was to cover that portion of the fees that dealt with indemnification? That was my assumption, Your Honor. And how are we supposed to review that? I mean, we should just make that assumption? And is there any discussion about why 25% would do it in terms of that division? That was not explicitly set out in his order. I assume under his discretion, he produced it according to the respondent's brief and the arguments made by all parties. Getting back to the findings of fact, the district judge found that when Rickside presented a quote, century, respond with a purchase order, contract was formed, Mr. Oaks wants to argue that somehow there's a reservation of rights in our quotation. He sets out the first two or three sentences in our quote, but importantly, he leaves out the very next sentence, which states, the receipt of your purchase order is an acceptance of this proposal if your purchase order agrees with this proposal with respect to the description of the part's price of delivery. So it's my position there is no reservation by Rickside. It's very clear in the quote itself. Once they said the purchase order, contract is formed, the terms and conditions on the quote are part of the contract. He cites no Texas law. He cites an unpublished Ohio opinion and another opinion, Axelson, which is not a Texas law. Both those cases have nothing to do with the situation in this case. Those cases, in each of those cases, one of the parties of the contract denied the existence of the contract. Here, everybody agrees there's a contract. Everybody stipulates there's a contract. The judge found and concluded there was a contract. Furthermore, there's no battle of forms here. To have a battle of forms, you have to have conflicting language. The judge made specific finding of fact that there's no conflicting language. As far as the statutory indemnity is concerned, there is a specific finding of fact by the judge that Century furnished the specifications and drawings. This, again, was supported by substantial providence. Chris Gaudet, the employee for Century, testified that he made each and every drawing. He submitted as providence all the drawings from 92 to 99. Lee Loper, representative of Brexiter, said we could not even go to step two, which is the cat drawing, until we had the original drawing, and we would never make a cat drawing without the original drawing. Century, from the very inception of this lawsuit, admitted, day one, that they furnished the original specs and drawings in their answer. It's also stipulated. Mr. Oaks wants this court to establish a new law that a whole-of-farmers provision, indemnity, does not apply after the goods are delivered and transferred, citing the Chemtron and the Motorola cases. Both these cases are misplaced. As this court's well aware, Section 2.312C has two very distinct provisions. It has the warranty against infringement and the whole-of-farmers. Today, we're dealing with the whole-of-farmers. All his cases deal with the warranty against infringement provision. And, excuse me, and he has no case law. He admits this in page 17 of his reply brief, that he has no case law dealing with this so-called conduct argument. And this is stated on page 17 of his brief. Telling him, in his original brief, he makes the following passage regarding public policy, and he says, quote, The purpose of the statute Arbitration? Yes. Your Honor, I'm not following those issues. Those issues are between. Okay. So, I'm not the proper court to respond to that. But, he recognizes the public policy of the statute that manufacturers should not be required to go investigate every patent if they're being infringed with specs. Yet, he wants to extend it for owners who are burdened on us. He now wants us to go police every use of our product to make sure it's not being installed or used in an infringing manner. That is not only impossible, it's absurd. Before I conclude, I would like to read a passage from RFR's present trial testimony, which is on page 36. That's under questioning from me. Question, and how does RECSCI commit to patent infringement? Your answer, you're manufacturing a product, or you manufactured a product that went into a system that it had to be installed in such a way. Question, what did RECSCI have to do with the installation of this product whatsoever? Answer, RECSCI didn't have anything to do with installation. RECSCI had everything to do with the manufacturing of the part that went into the system that required it to be installed in a certain way. Whether he wants to call it direct infringement or infringement, he's only suing us for manufacturing the part. All we did is exactly what Century told us to do. This is certainly a case that's entitled to both statutory and contractual indemnity. Is there ongoing? Is there actually ongoing? No, my understanding of this part is obsolete, and it's no longer being manufactured by other parties. Thank you. Thank you. Thank you, Your Honor. May it please the Court, I represent Century Steps in this case. I've represented them for the last nine years in this matter. It's all really the same matter that arises out of the initial lawsuit against my client Century back in 1998. So are you in a position to answer my question? Yes, ma'am. Yes, ma'am. The permanent injunction does enjoin RFR from pursuing its arbitration claims related to the settlement agreement. In other words, let's assume hypothetically Century never appeased any money that is arguably required under the settlement agreement. That's right. How is RFR supposed to have that issue adjudicated? It should have it adjudicated in the same court that is determining the rights and the responsibilities of the parties under the settlement agreement, and that was the district court in front of Judge McKay. Are you saying it's a contempt matter, not like a new case? Well, it should have been brought in this case. It should have been brought in the red-tie case below, the one that we are dealing with. How is the settlement provided for arbitration if there is a violation of the settlement agreement? Well, they waived arbitration in a number of ways. First of all, with regard to the sales of the filler that we have withheld payment for. For those, they filed the arbitration, and then they filed two separate lawsuits in federal court. First, a separate patent infringement lawsuit that we'll talk about in the next argument that claims that because we didn't pay for it, our subsequent sales of those products constituted infringement. So they're saying that's an infringement claim. I still don't understand your response. It seems to me the basic circumstances are two parties have a lawsuit. The two parties settled the lawsuit. The settlement agreement provided for arbitration if they had a dispute about whether one or the other was not carrying out their obligations under the settlement agreement. If all that is correct, what authority does the district judge have to override that and say, no, no, you can't arbitrate. You only can file a suit with me if there's a charge that a settlement agreement is not being complied with. Yes, Your Honor. Under the Fifth Circuit law, if a party substantially invokes a litigation process on an arbitral claim, then they waive the right to later arbitrate that claim. And in this case, they ask the court to determine the rights and responsibilities of the parties under the settlement agreement. Specifically, their duty to indemnify us. And the settlement agreement is like any other contract. We're going to pay you money. It doesn't sound like the same issue. Of course, the law is clear that you can't litigate Issue X this year and then next year, having lost in court, go to arbitration on Issue X. But it looks to me like here it's not Issue X, it's Issue Y. These issues are two sides of the same coin, Your Honor. The settlement agreement, we paid money for two things. One, a release. Two, indemnity in case we get sued. They litigated the issue of indemnity in the court before Judge Kincaid. And then who was to litigate the issue of payment under the settlement agreement, we're paying for indemnity. They're saying they don't have to indemnify. Yeah, but let's assume hypothetically that we were to agree with the district court that there is an obligation of RFR to indemnify you all. Right. So you've got, you're right, a bargain. And let's assume hypothetically, and I don't know what the facts are, I'm not sure I want to know, that you have never paid, essentially have never paid any money to RFR. Arguably owed under the settlement agreement. So are you saying because you prevailed on the indemnity, you still don't have to pay anything under the settlement agreement? Or that there's no way to arbitrate that and to mitigate that issue? I'm saying it should have been brought to the district court, not that they- So they gained their right? No, they haven't earned their right. So what are you saying? The permanent injunction requires directly that if they want to file a case tomorrow, they can file it. The only case they can file is an injunction in this particular court. Yes, Your Honor. And what is the authority, Your Honor, not when a case is pending, but this case is, let's say, overdue, what is the authority for a district court to require that all parties come to that precise court after he no longer has any case pending before him? Well, in this case, I believe it's just a matter of judicial efficiency.  The question is authority. Even if it is efficient, if the judge doesn't have the authority to do it, he shouldn't do it. So the question is, where is his authority for all future time to order that disputes come to him as opposed to go to arbitrators or anywhere else? Well, during the pendency of the case, of course, the judge has- But that's a permanent injunction. I understand. I understand. But courts issue permanent injunctions all the time that enjoin future permanent. He's just saying that if you're going to go out and litigate this agreement- We understand what it says. The question is, what is the source of authority for a district judge to order parties to come to him and not go to arbitrators or go to other courts? I would just refer you back to the brief where there were cases that they- where parties have been serial lawsuit filers, such as in this case. Parties have been required to file future lawsuits in front of a certain court. And that's the best I can do right now, and I'd be glad to submit a supplemental brief on that if you'd like. This isn't a case where he's in some other court and Judge Kincaid is saying, No, these things should all be consolidated with me in Dallas. This is a case where he says he has a right in the future to go to arbitration, but the injunction, as I understand it, blocks him from going to arbitration. Well, those are two different parts of the injunction. There's an injunction that says you have waived- There's a finding that he has waived arbitration by substantially invoking the litigation process, which means you're enjoined from pursuing the arbitration. The other part is, you've been- what's the court saying? You've been filing these actions all over the place. In the future, if you have more of these, you need to come see me. What if there's a state law? I mean, if attorneys say we're not doing that- No, they're not.  If I could discuss briefly our- our right to be identified by RFR under the settlement agreement. The settlement agreement is clear in Section 8.3 that RFR has to identify essentially against any claims that RFR- that any claims that Rex High or any other supplier might bring against us as a result of an RFR claim against that supplier. And that's exactly what happened. RFR sued Rex High, Rex High sued us. We were entitled to indemnity from RFR for that- against that claim. To hold otherwise would simply lead to an absurd result. If RFR is not responsible to us, to identify us, if they were to prevail on a patent infringement claim against Rex High, even if- even if they were entitled to a set-off based on our prior settlement back in 2000, let's say we settled for a million and the court found there were $2 million in patent infringement damages, if there's no- if there's no duty to identify on RFR's part, then we're paying twice for the same claims, for the same infringement that we've already been released from. So- so I think to- to take that position is- is absurd. It would lead to- to absurd results.  Thank you. Mr. Holmes, we'll restore two minutes of rebuttal time. May it please the court. If I could pick up on the last issue you talked about. The- it would not lead to an absurd result because under the one satisfaction rule, a party need only pay twice- the no-release clause should be found effective by this court for the primary reason that under Texas law, the recognized legal principle under which security of indemnity leads to extinguishment- extinguishment of claims is the concept of release. And it is conclusively presumed that parties- and this law constitutes an integral part of the agreement as if it was incorporated therein. Therefore, this clause, the no-release of rexite clause, in these circumstances should be effectively interpreted to mean the indemnity agreement shall not be construed to release rexite through circuity of indemnity. Well, if that's what you wanted, why wasn't that what you wrote into the mind? Well, because there's danger in specificity. For example, if I would have thought that there was a danger of contractual indemnity, if I thought that the quote form and said resulted in contractual indemnity and hadn't thought of statutory indemnity, then they could say statutory indemnity was outside. If I had limited it to just this specific terms, then the lawyers may have come up with another type of agreement to get around the clause. So the best way to protect RFR was through- I mean, it had to go through the gateway of the principle of release. Therefore, the most effective and prudent and cautious thing to do was to put it shall- nothing shall be construed as a release of rexite. All right. Thank you very much. The next peer argument in Bill 105-